May please the court Steve Benedetto on behalf of the People's Law Forum for the plaintiff appellants Roland Harris Jessica Perez and Rhodessa White on behalf of her two minor children survivors of Jacob Harris who's deceased. I'll reserve three minutes and do my best to track my own time. Jacob feet from him in his vehicle he ran and three seconds later he'd been shot in the back by an AR-15 multiple times and lied on the ground bleeding out. Three rulings of the district court deprived his family and his survivors of the ability to present that case to a jury. Those three in order were the denial the improper denial of leave to amend a complaint that had never been before amended that the court acknowledged could be remedied by amendment and denied leave anyway. The dismissal of wrongful death claims against the municipal employer the City of Phoenix based on a application of Arizona law that was far beyond the original case where it originated Ryan B Napier and the willful departure of this court's instruction that in cases involving lethal use of force by police officers where the victim is deceased the court the trial court is obligated to vet the evidence and consider the officers testimony and claims in light of the entire evidence which we saw in this case. Could I ask you to at the outset to focus for me on the 1983 claims not the you fault the district court for not allowing you to amend to assert a 14th amendment liberty claim which would I think I I think we could call the loss of consortium claim and to amend to better allege your Napier claim. Put the Napier claim aside for a second. Did you did you really mean on appeal not to suggest that you should have been allowed leave to amend to assert a 14th amendment excessive forth excessive forth claim? No, your honor. Your brief says that and I don't I'm not gonna hold you to it. And I apologize for any confusion in the brief. Okay, so let me let me then focus on the two on the amendment issue because this is troublesome I think both on both ways in the case. The judge sets a timeline for amending the complaint. You are not then representing the Jacobs family. I'm the Harris family. Uh, but the timeline passes and previous counsel does nothing to move to amend. You come in right after that deadline and you ask the judge several times to extend the time for discovery and the judge is quite agreeable. Extends the time for discovery. Discovery ends. Dispositive motions are filed by the city defendants, if you will. And then for the first time you ask to amend the complaint. You're obviously aware, I don't mean you personally, but your side of the case is obviously aware of the deadline to amend the complaint, but have done nothing up to that point until after it's nine months past the time to do so, to try to do so. I think those those are just the facts. How do we, and I think under that circumstance our case law says we're no longer operating under Rule 15's liberal amendment policy, but rather under good cause under Rule 16. Assuming all that's right, tell me how why the judge erred in finding that you hadn't demonstrated good cause because it seems to me the 1983 claims can't proceed absent an amendment. There was no real assertion of loss of consortium in the original complaint and we don't have a personal representative in the original complaint. So those claims rise or fall on the ability to amend. Tell me why there wasn't good cause in this case. Your Honor, in terms of the lack of good cause, there wasn't good cause, excuse me, that there there was good cause to amend other than the fact that the defendant did not file their motion for judgment on the pleadings. And bear in mind this was not a motion for summary judgment, which is what we saw in the Mammoth Recreations case. But isn't it its functional equivalent? I mean, what he's saying, what the defendant is saying is taking all the facts into light most favorable to you, you still can't win because there's no evidence of loss of consortium and there's no evidence of the appointment of a personal representative. So I'm not sure it makes, a form of a motion makes much difference. You wouldn't be in any different situation had this been included in a motion for summary judgment. I think we would be in a different situation, Your Honor, is that the motion for judgment on the pleadings was premised on the idea that these complaints, as the court points out, were deficiently pled. That the, in terms of the estate issue, that's not an issue on appeal. But the familiar... Why is it not an issue on appeal? Because you can't assert the excessive force claim on behalf of the decedent in the absence of a personal representative, right? And I apologize, Your Honor, I'm afraid I may have taken us down a diversionary lane by misunderstanding the court's original question. We are not asserting a 4th or 14th Amendment claim for excessive force. That's what I was asking. On behalf of the estate. So all we're worried about on the 1983 side is the loss of consortium claim. That's correct. Thank you for, that's helpful. My apologies for the confusion on that. And I think to the extent we are talking about this issue, I think this is an important point on this particular issue. Because the, on this issue, we have a complaint that's filed. It's unamended. In response, of course a defendant has options. They can file a motion to dismiss. They can file a motion for more definite statement. That does not happen. There is no indication that the defendant believes this is deficiently pled until there's a motion for judgment. Well, it is in there, to be fair to them, it's in their answer. Among their affirmative defenses, they, they seem to outline the very deficiencies that eventually lead the judge to dismiss. Sure, and that's fair, Your Honor. And as we know, there are a whole lot of affirmative defenses that are alleged as beyond, you know, kind of form defenses. I think the Mammoth Recreations case is instructive on this point. Because in that case, where the court did ultimately deny leave for lack of good cause, the Ninth Circuit said, hey, we've got a case here where there was deficient pleading. And that affirmative answer, the affirmative defenses were alleged in the answer. And they were also dictated and spelled out in interrogatory responses. And the deficiency was further set forth in a And here's the key point. That deficiency involved a completely separate defendant. The Mammoth Recreations case, the defendants were saying, we're not the proper defendant, we're mere shareholders in the proper corporate defendant. There's no substitution of parties here. There's just a clarification of a lack of clarity of claims, of which the plaintiff is not on affirmative notice other than what the court just pointed out. The, the affirmative answer and,  affirmative defenses in the answer until this motion for judgment on the pleadings is filed. And, and discovery was still open at that point. In fact, no depositions had yet occurred at that point. So this is where we see a distinction between the current matter and that Mammoth case on which the district court relied. I know you don't want to spend all your time on the motion to amend, so let me ask a question that might segue you into the other parts of the case. There's a bunch of, there's a state law wrongful death claim on which the district court grants summary judgment. Is the standard for the state law claim, because in order to show loss of consortium, you'd have to sell excessive force or something, some constitutional violation. Is the standard for the state law wrongful death claim different, greater, lesser than what you'd have to show to show a constitutional violation? It is lesser because we're not going to be dealing with the same level of a qualified immunity defense. Qualified immunity. Right, but the court never got to qualified immunity. Right. So, and you agree if we were to rule in your favor, the court would have to address qualified immunity. That's correct. So, if it's lesser, is there a preclusive effect if, if they're affirmed? If it's affirmed on respect to your 1983 claim? In other words, if you couldn't even prove enough to show the lesser burden of the state law claim, don't you necessarily lose on the 1983 claim? I think it would depend on how the court would affirm the ruling on the state law claim, which of course we would urge against. No, no, what I'm trying to figure out is the issue. I know the district court said it wasn't futile, but it seems to me if you can't establish, if, if you fail on the state law claims and they don't require, they require a lesser level of proof than the 1983 claim, I'm not sure how you establish the constitutional violation that would give rise to the consortium claim. So, that's a messy question, but see if you can unpack it for me. I think I see where you're headed with us, Your Honor, and I think these are distinct issues. The basis for the dismissal of the state law claim, municipal liability state law claim against the city, is a proceed, essentially a procedural. That's, that's the nappier part. So, again, let me, help me here. There was also a wrongful death claim against the officers. Correct. You're not challenging the ruling on that on appeal? You are. We are challenging. Right, that's the one I'm focusing on. So, we're, my apologies, I'm following you now. So, when, when we're talking about the wrongful death claim, the state law claim against the officers individually, we're talking about a negligence and gross negligence claim that expands far beyond the intentional act. When we're talking about 1983, I think the case law is fairly clear. We're really limited on the intentional act. What were the circumstances surrounding the shooting? We're talking about state law wrongful death, we are now in a completely different atmosphere. We're considering things like the plan that led to this, the number of other vehicles, and the number of other people involved in this planning. Who was involved in deciding that for a group of teenagers who they were watching all day long at their homes, in their vehicles, that they were going to allow them to rob a fast-food restaurant, allow the robber to be preceded and carried out, follow that vehicle for eight minutes, and then deploy this grappler device. Essentially, the argument there is the intentional use of force was a reasonably foreseeable outcome of the gross negligence of the plan itself, which extends beyond Officer Burt's by himself. I told you I'd remind you as you're getting towards the end of your time. You can continue, but if you want to say for the rest of the rebuttal, I'll... Sorry, can I ask one quick question? On the motion to amend, you rely on Eminence and Harris, but neither of those cases deal with Rule 16. Is that correct?  So, and we're definitely in Rule 16 land. We are in Rule 16 land to the extent that this deadline was set, and our position is the fact that a motion for judgment on the pleadings is filed takes this out of Rule 16 land, because that's essentially the good cause. When we're looking at Rule 16, it's a failure. Why are we failing to amend? What's the good cause for an earlier failure? The good cause is there was never any challenge to the initial pleading. Okay, thank you. May it please the Court, Christina Retz on behalf of Officer Burt's and the City of Phoenix. I want to go directly toward the Court's several questions, and we agree that first, this is Rule 16 that applies first because of the procedural history of this case, and the fact that the defendants did not lie in wait, as suggested by the plaintiff, and failed to bring the deficiencies to their attention. It was set forth in the case management report. It was set forth in the answer, and then in the record are my communications to counsel identifying the deficiencies, including the additional problems that we were having in the case with obtaining discovery responses from the plaintiffs. The only reason why discovery was ever extended for the multiple times it was, is because we were not getting releases. We had sent discovery that was pending for at once a year, and we're not getting any responses. We sent RFAs. Let me ask this question in a non-accusatory way, because I don't think, I don't think the record demonstrates that you all did anything, your side of the case did anything wrong. It does seem to point to seek leave to amend the complaint at a point at which it almost surely would have been granted, which is to say before the deadline. Should the plaintiff really suffer because of those mistakes? Well, Your Honor, I think there was plenty of opportunity to do so. I agree. I agree. I said they were mistakes, so I'm not, I'm not, I'm assuming that diligent counsel, and I'm not blaming anybody here, should have moved to amend the complaint before the deadline expired, or at least sought to extend the deadline. No one did, but with respect to the 1983 claim, that's the only one I'm focusing on at the moment, it would have been a loss of consortium claim, and it So, it doesn't add a new issue to the case. It doesn't, it's not really focused on anything you're not already trying, which is the legality of the stop and the shooting and everything else. So, why under those circumstances shouldn't a district judge, whether it's a good cause standard or some other standard, allow them to amend the complaint and pursue that claim? Under the Foman factors, if we turn to Rule 15, we would look at undue delay and prejudice in the timing. We would also look to futility. What, I guess I was focusing on the prejudice. Yes. How, obviously you won and you don't want to have to go back, but at the time that the motion was denied, what prejudice would have accrued to your side of the case, had the, I keep calling it the loss of consortium claim, but you know what I mean, the 14th Amendment. Yes. Liberty claim had been allowed to be amended just to provide facts that said, here are the survivors and they've lost the companionship and affection, etc., of the, of the decedent. Well, you're talking about a completely different standard for the 14th Amendment claim, the purpose to harm standard that would be applicable. So, you're talking about a very heightened standard that would apply. It might well fail on its merits, but you're already defending against really an argument of purposeful harm in the state law, on the state law side, and for whatever reason the judge thought that was right, but he didn't, he didn't deny it on that basis. So, I'm just not sure what additional burden it would have put on you. They still would have had to show the constitutional violation. It's essentially the same set of facts you're trying on the state law side. Why would you be prejudiced? Because our experts had already gone through the case and developed the case without that heightened standard. The case had been pending for a significant period of time, years at that of money in, in putting forth tons of evidence regarding the prior crimes, everything at issue, and there was no narrowing whatsoever, but in any event, Your Honor, I think this, the question that you asked about the preclusive effect for the... But, except the judge had held on that. I don't, I'm not sure we should get to there in the first instance, and the trial judge might well say, okay, now I find it to be futile. Now that I've looked at the amended complaint, it's futile. And, but it seems to me that since the standard for the loss of consortium claim is that the defendants intentionally deprived you of loss of consortium, all the defenses you were making on the wrongful death side were, were directly applicable to that claim, were they not? But you add a subjective standard to the 14th Amendment purpose to harm. It's a subjective standard of being unrelated to the legitimate needs of law enforcement. So you're not going on merely an objective standard for the objective reasonableness for the Fourth Amendment. You are stepping up to a next layer to say that that action had to have been unrelated to... That's an additional burden for the plaintiff. With additional discovery. Right, it's an additional burden for the plaintiff. He had to deal with it then on whatever evidence he had. He might not have had enough evidence to survive summary judgment, but I'm having a little difficulty figuring out why it's an additional burden on you. It's a higher burden on him. I mean, the judge found he couldn't meet the burden to show wrongful death, but... If the plaintiff had the... So the, that ruling came before the summary judgment. I understand. I understand. I'm just trying, in my mind, you know, it you could have addressed them all in the summary judgment. Had you done so, we'd had a very different case on appeal. But what we have on appeal is a procedural ruling, maybe correct, that prevents the defendant from, the plaintiff, from making the argument he wants to make. And that's what, that's what troubles me a little bit. And your honor, I would turn to turn to the harmless error portion of this. Is that if we look at the facts that were developed, this is ultimately harmless because the facts in the ruling of the court would be preclusive for the 14th amendment claim. Because if under the state statute, the conduct is justified, it cannot meet the purpose to harm unrelated to legitimate law enforcement objectives. So while, if you were to find a technical violation there, as we walk this through to the outcome, it's preclusive. It resolves that. Was there an amended complaint submitted? I didn't see one. There was an amended complaint submitted and I believe actually the amended complaint would have introduced further errors because the amended complaint did not even allege an assault and battery committed by Officer Burks. But, but, but I guess once again, we're not dealing with the sufficiency of the amended complaint, right? At least the trial judge did. He didn't say, okay, I've looked at your amended complaint. It's, it's not sufficient to state a claim or it's not sufficient to, to meet the, the issue raised in the motion for judgment and the pleadings, so I won't let you file it. But, and to the contrary, he said, I think you could amend. Only for the 14th amendment. For the 14th amendment, yes. Not for the other, for the facility. Yeah, that's right. But he said, I think you could amend to correct that, but you're too late, right? And if we walk through, I think that's where we come to the next step in the analysis that now we have a ruling on summary judgment on the state law claims that preclude this finding of purpose to harm. And I would note that that, if you look through Ninth Circuit case law, Daly versus City of Phoenix for an example, is that even if there is a question of fact on whether use of force was permissible under the Fourth Amendment, courts have routinely disposed of the 14th Amendment claims, even with that question of fact, showing that heightened level in addition. I do also want to address a argument that was raised for the first time in the reply brief. It was not submitted below to the District Court. It was not part of the District Court's analysis. So the first time ever showing up in the reply brief was this statutory construction argument for the state law claims of justification where the plaintiffs tried to replace the plain language of the statute with other words, to argue that it was absolutely required to replace the officer in the statute. It says the officer. It does not say a officer. It says the, with a requirement that every single officer under the circumstances in the world, every single officer, would have had to believe that the force was justified, which is not in accord with statutory construction. There is no case law cited for that point. It was waived by not being addressed by the District Court below. Can I ask a question about the Napier? Yes, Your Honor. And so now it seems like they're alleging that the intentional acts was the stop, you know, the plan of stopping with the grappler and the flashbangs, and that was all intentional, and then the death was reasonably foreseeable from that. What's wrong with that argument? Because Napier only allows, the way that they're arguing is it relative to the city and the respondeat superior claim. Right. And the city's respondeat superior was tied to Officer Bertz and Officer Norman, who has since been dismissed for firing and missing entirely. And it is related only to the intentional use of force. They're alleging that the plan was a negligent plan, which under Ryan v. Napier, there is very clear language that says that the officer's evaluation of whether to use force, the plan put in place, does not state a claim under Ryan v. Napier. And this was not something that was ever alleged during the case. So to the extent that they're alleging an intentional scheme to put the decedent in the circumstance where he ended up getting shot, under Ryan v. Napier, wouldn't they also have to allege that the city knew of that intentional scheme? In other words, well I think when you deal with intentional schemes, it's not enough that the city be negligent. The city has to have prior knowledge of the intentional scheme. Of propensity. Of the propensity to engage in that intentional scheme. Exactly. So it almost cuts the other way. In other words, if they were making a negligence claim, then they could argue that the city was negligent for not, for allowing the officers to do these sorts of things. I understand you have other defenses to that, but to the extent it's an intentional, an intentional act claim, then their burden under Napier is to show that the city had the propensity, knew that these officers had the propensity to do this sort of thing. And this is the first grappler deployment that happened on the police force, which actually successfully stopped this and prevented a police pursuit. So I don't think under the facts you could even get there because of the fact that this tool is designed to keep individuals from fleeing. It's designed to protect the community. It worked perfectly. Stopped the vehicle and the flashbang was designed as a de-escalation tool. It was designed to keep the occupants in the vehicle and it successfully did keep three of the occupants in the vehicle. A different choice was made by Mr. Harris, a different choice to flee. Can I ask you a question? And I know because we ask questions, the council doesn't always have the ability to address something and perhaps he can address this on rebuttal. Um, you, the plaintiff has an expert who says there is no doubt in this record that Mr. Harris left the car and was shot at some point after he thought happened. The other side is an expert that says, well, they couldn't have seen that because of the smoke in the flash banks. Let's assume for a moment that it is contested about what they could have seen and couldn't seen. I couldn't have seen at that point. What effect does that dispute have on the wrongful death claim? I don't think it has any effect, Your Honor, because we still have a fleeing felon who under the last subsection of the statute, the he would endanger the safety of the community based upon the 27 odd prior armed robberies, aggravated assaults and the 28th that officer Burrs was aware of occurring on video in front of him. So is that the statute creates a presumption of reasonableness under those circumstances, right? Well, the two separate statutes, first 12 7 16 creates a presumption of reasonableness. And then you have to look at the actual language of the statute of 13 409, which has several different subsections that apply. But I guess I'm trying to figure out whether or not there was any evidence at the summary judgment stage here. We're not dealing with pleading that that could be viewed as rebutting whatever presumption of reasonableness the statute gives rise to. I don't see any evidence, Your Honor. We have a gun that was photographed in the back of Mr Harris's waistband. The police report in the record documents that surveillance sawed in the back of his waistband. We have video of the suspects going into the Whataburger armed. We have the guilty pleas that they are armed when they go into the Whataburger. The gun has Mr. Harris's DNA on it. The gun or an object, if you're gonna not even admit that it's a gun, flies from his hand in the video. The object... Is that a disputed fact? You clearly see something flying from his hand in the video. The plaintiff is disputing that. I don't believe there's any reasonable way to dispute that based upon the photographs of the gun. And the gun was found where that object landed? Yes, and multiple officers in the record stated that as they were trying to apprehend Mr. Harris, they saw the gun as well. They saw it sitting in there and the air unit observer said he saw what he believed to be a gun. But regardless... So I'm saying let's assume there's a fact dispute about what they could have seen. Your view is that that really doesn't matter? Exactly. I could imagine a different set of facts. For example, where there was a witness who said that the that the decedent had placed the gun underground and put his hands up in the air. And so I'm trying to figure out whether there's anything in this record that might create a fact issue as leading in that direction. No, Your Honor. And in fact, I just want to make the clear point that there's been a lot of back and forth about whether he was turning back, what what was happening. But there's, as you watch the video and you look at the record as to how close Officer Burtz's vehicle was, he is directly in the line of that vehicle. These are feet away. So the video in the respect of the Fleur from 11,000 feet distorts the distance. And right behind Officer Burtz's... Judge Gould, I think, had a question. Counsel, I have a question. First of all, on the state law claims, does the state statute make absolutely clear that the officer could use deadly force against a fleeing felon? Yes, Your Honor, it does. And that is the second... that is subsection... several of them do under subsection 2A, has committed, attempted to commit, is committing, or attempted to commit a felony involving the threat and use of a deadly weapon. Is this tempting to escape by use of a deadly weapon? Or subsection C, through past or present conduct of the person, which is known by the police officer, that the person is likely to endanger human life or inflict serious bodily harm to the other. Okay, thank you. Thanks, Counsel. I tend to... my similar to that, that the state law claim seems like it can be dismissed and it's sort of open and shut. But on the federal law claim about excessive force, I don't really understand why the district court dismissed that with prejudice. And, Your Honor, the issue of dismissal of the Fourth Amendment claim was specifically for the lack of having a personal representative withstanding to advance that claim. And the plaintiffs are now not objecting to the dismissal of the Fourth Amendment claim. They simply are objecting to the dismissal of the purposed harm Fourteenth Amendment claim. Okay, thank you. We've taken you over... well, let's put four minutes on the clock because this is an important case and give Mr. Benedetto sufficient time to do rebuttal. Thank you for that, Your Honor. One thing I do want to address regarding Judge Gould's last question to Defense Counsel. In the idea of this being open and shut, I agree if this were a question analyzed under qualified immunity principles, then the state law issue of justification might well be open and shut. But it's not. The justification statute specifically has this requirement of whether the act is necessary. And we are not arguing that every police officer on the face of the planet must agree it's necessary. If the police officer is unreasonable in believing that the lethal force is necessary, then his opinion doesn't count. It has to be the belief of a reasonable police officer that the use of deadly force is necessary to affect one of these these outcomes. Let me ask you to focus on that because your theory today, and it's in your briefing too, seems to be that there was this whole series of events where the police officers didn't act correctly. But if you just focus for a moment on the time the deadly force was used, we do have a fleeing armed felon. Why, if we just focus on the use of deadly force as opposed to the grappling and the other stuff, why under the state law is there a fact question? A few reasons, Your Honor. First, again, there is this question of necessity. So under state law we are looking at the aggregate. The officer must reasonably believe it's necessary. Correct. It's not us deciding, but the officer's reasonable belief. That's correct. And under qualified immunity, necessity is a factor to be considered. Under the Biscotti case, it makes that clear. It's something to be considered, but it is not dispositive, whereas under state law it is dispositive. So we have a couple issues here that are highly relevant. One is the volume of the force out to respond to this incident. This was not an isolated officer in the middle of nowhere by himself. At one point I think we see something like 18 police vehicles within minutes afterwards, and this is only from the portion of the video we can see. We know it's a multi-agency response, so that weighs into it. One thing that does weigh into it for sure is there is this idea that's simply been asserted by the defense that Mr. Harris had this black Targus gun in his hand because it was photographed. And Judge Boone would say, I think you asked about what was the evidence, and the evidence is, counsel says it. It's repeated numerous times, and we do have Detective Brett Bundy, who's in the aircraft, telling an officer in his deposition, he repeats this, I see something that came out of the the person's hand. It's right by your feet, and we don't have any deposition testimony from that officer saying I was the person to look down and that was the gun. What we have is a video showing something flying out of a hand, and we don't have a crime scene investigator. The person who was a crime scene investigator wasn't made available for deposition. Do you have a theory on what that object was, if it wasn't a gun? We don't know. We don't know where Jacob Harris's cell phone was found. It's not a deposition. We do know, I don't think it's disputed, that he was seen earlier in the day carrying a firearm. Earlier in the day, there is a photo of him with a, what appears to be a black barrel coming out of his hands. So the officers would have reasonable cause to believe that he had been armed earlier in the day. I would DNA is on the weapon. Correct. And again, he was, there's this photographic evidence of being armed earlier in the day, distinguishing when that DNA got on the gun. We don't have evidence of, but we do have this question about whether he was an armed felon fleeing. We've also got a question of what other possible responses were available to this officer. According to Officer Burt's testimony, 1.8 seconds elapsed from the time that Jacob Harris is lying on the ground after being shot. So it's portrayed as this bang-bang situation, but we know leading up to this, there was conversation about what they were going to do. The video might show slightly more than 1.8 seconds, maybe as much as three, but in those three seconds, Officer Burt's claims that he grabbed his assault rifle, observed Jacob Harris exit the vehicle, observed Jacob Harris point the gun at him and hold it up while he was running away, observed a Circle K clerk 635 feet away inside the Circle K working, observed people at the parking or at the gas pumps, pumping gas, and concluded that he had to use lethal force. I think the totality of that testimony is something that a reasonable jury could disagree with, and that's really what we're talking about here as a summary judgment. Can I ask you, what do you mean by they discussed the plan beforehand? Did they say that we'll shoot him if they flee? What are you saying? That wasn't discussed, we'll shoot him if he flees. What was discussed is we will use the grappler device while they're driving through traffic, and we'll deploy the flashbang. I guess I want to question, because on your Napier claim, you're saying that that was negligent to do that now, but wouldn't deploying the grappler and the flashbang be intentional acts, and so therefore it's still within the deployment of the flashbang, the grappler would be intentional acts. The Napier argument and the state law claim on that issue against the city expands beyond that and further back, because this is the context. But you can only impose vicarious liability on the city for the acts done by its employees, and if they were intentional, then don't you have to show under Napier that the city knew of their propensity to do these things? Absolutely. Now, I understand when you get to the shooting, you have a different argument, but as to the flashbangs, there's no evidence that this is summary judgment, that the city knew that these officers had a propensity to do grappling or flashbangs, or even to shoot suspects. No, and I appreciate the question, Your Honor, because I think that highlights a misunderstanding of our argument. We're not arguing that the city is vicariously liable for the intentional acts of using the grappler and deploying the flashbang. The argument is the negligent plan as a officers using this grappler, using the flashbang, these officers were involved in this surveillance operation for hours ahead of time. They were at one point leaving the parking lot near the Whataburger because there were so many police officers around undercover, they didn't want to tip off their presence. This was a multi-hour operation during which a plan was agreed upon that they would execute this fairly high-risk plan to disable this vehicle by surprise. And our argument is that the fatal shooting that happened afterwards was a reasonable foreseeable outcome of that negligent plan. Thank you. You've now gotten to the five minutes. I think you tried to save it at the beginning, but Judge Gould has a question. Yes, I have a question. On the federal law claim, I'm not really understanding why the defendants should not have an opinion on whether we should vacate and remand the decision in part on the federal claim with instructions to dismiss without prejudice. Well, and Your Honor, that is part of our argument on the federal claim, is that we believe that it should be remanded because we should have had the one point on that. Even without an amendment, the original complaint names Roland Harris, Jessica Perez, and Rhodessa White. It mentions the 14th Amendment. There'd be no reason under Arizona law to name multiple plaintiffs. There's only one wrongful death plaintiff under Arizona law. There'd be no reason under a Fourth Amendment excessive force or 14th Amendment excessive force claim to name more than one plaintiff because only the estate, as we know, can serve as the plaintiff. I'm trying to figure out, because Judge Gould's question raises one in my mind, and it's like the one I asked before. Put outside all the state law claims for a second. If you're on the 14th Amendment loss of consortium side, you would have to show a constitutional violation, correct? Correct. But you not, that constitutional violation I think would have to be an excessive force claim, would it not? Because that's what led to the loss of consortium. That's correct. But you're not pursuing your excessive force claim, which the judge dismissed with prejudice. So how could you establish your loss of consortium claim? The excessive force claim was dismissed for lack of standing. The argument asserted by the defense, which the judge accepted, was... So your argument, it wasn't dismissed on demerits, but rather for one of a correct plaintiff. Absolutely. That was the basis for dismissal. Judge Gould, any other questions? Well, on that dismissal, should that have been with prejudice or without prejudice? I wish I could stand here before you today, Judge, and tell you that should be without prejudice. Unfortunately, the state of Arizona law at the time, and effectively today, was such that the late appointed personal representative, we had a personal representative appointed after the two-year deadline, was probably ineffective to make that claim. I don't think anything about the amendment would have changed that late appointed personal representative, and even if it were without prejudice, I don't think that claim could have been salvaged. Dave, thank you. Thank you, counsel, both of you for your arguments in your briefing. I thanked counsel before for her flexibility and rescheduling. I thank counsel for the appellant for that. With that, this case will be submitted.
judges: GOULD, HURWITZ, BUMATAY